IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JAMES C. SHOTWELL,<br>                    Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. 2:10 cv 00349 - PHX - TMB<br><br><br>ORDER AND OPINION |

## I.  MOTION PRESENTED

James Shotwell ("Shotwell"), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the

decision of the Commissioner of Social Security ("the Commissioner") denying his claims for

disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II

and XVI, respectively, of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-83c.

Shotwell filed his applications on March 30, 2005, alleging disability since April 4, 2004, due to

a head injury he sustained in an automobile accident.[1]  After Shotwell's applications were denied

initially (Tr. 136, 186-89) and upon reconsideration,[2] he requested a hearing before an

---

[1]Administrative Record ("AR") 225-27, 298.

[2]AR 134, 181-83.

administrative law judge ("ALJ").[3]  The ALJ held a *de novo* hearing on February 20, 2007,[4] and issued a decision on March 16, 2007, finding Shotwell was not disabled within the meaning of the Act.[5]  The Appeals Council granted Shotwell's request for review of the ALJ's decision and, on August 10, 2007, remanded  the case for the ALJ to evaluate a disability rating from the Department of Veteran's Affairs ("VA").[6]  Accordingly, the ALJ held another hearing on October 15, 2007.[7]  The ALJ  issued a new decision on December 26, 2007, finding Shotwell was not disabled.[8]  The Appeals Council granted Shotwell's request for review, and, on June 26, 2008, remanded the case to a different ALJ because it found that the prior ALJ had not complied with the Appeals Council's August 2007 remand order.[9]  The new ALJ held a supplemental hearing on October 14, 2008, and  issued a decision finding Shotwell not disabled on March 17, 2009.[10]  The Appeals Council denied Shotwell's request for review of the March 2009 ALJ decision,[11] making it the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981. This appeal followed.  Shotwell filed a

---

[3]AR 172.

[4]AR 57-96.

[5]AR 145-53.

[6]AR 199- 203.

[7]AR 83-96.

[8]AR 156-64.

[9]AR 206-10.

[10]AR 19-28.

[11]AR 6-9.

preliminary motion for summary judgment at Docket 15. The motion at issue here is a motion for summary judgment filed at Docket 17, which is substantially similar. The Commissioner responded at Docket 20, and Shotwell replied at Docket 26.

## II. RELEVANT BACKGROUND

Shotwell is a 27-year-old combat veteran of the Marine Corps with some college education.[12] He sustained serious head trauma in 2004 during a high speed vehicle rollover accident on a return trip to base between Phoenix, Arizona and 21-Palms in California.[13] The accident led to long-term mental and physical impairments.

Although alert, oriented, and in a positive emotional state, all the medical evidence shows that Shotwell suffers from severe auditory, verbal, and visual learning and memory impairments.[14] His cognitive damage also impaired his physical coordination: whereas he had previously been at a "near professional" skill level playing the guitar, he afterwards had difficulty with fine motor control that made playing difficult. Despite average or above-average intelligence, Shotwell demonstrated consistent learning and memory difficulties, necessitating the use of a PDA for daily activities.[15] During his rehabilitation, Shotwell traveled to Ohio, and reported gradual improvement but an eventual return of physical impairments, such as left side

---

[12]AR 101, 225, 306-07. Shotwell was a lance corporal in the USMC prior to the accident.

[13]AR 298.

[14]AR 492-500.

[15]AR 461-77.

weakness and limping.[16]  His ability to pay attention and learn remained low, and his processing

was estimated at lower than premorbid level.[17]  Shotwell also continued to suffer physical

impairments which included vision loss, slowness and weakness, and uncoordination on the left

side with sensory deficits on the right side.[18]  For this reason, Shotwell was deemed not fit for

duty.  Shotwell continued to show "significant impairment of memory function and new

learning" and left-side weakness/uncoordination throughout the next year.[19]  During his

examinations, Shotwell repeatedly expressed eagerness to return to work and study when able.[20]

Dr. Matthews noted impairments in vision, gait, sensation, and memory in April 2006, and

provided paperwork for a disability auto sticker.[21]  In August 2006 neurologist Dr. Nichols noted

continuing difficulties with retaining information, running, and assessed him as not fit for duty.[22]

Shotwell continued to suffer from a low GAF score (assessed at 52 by Dr. Tarazon) through June

of 2007, which was also based on depression and PTSD from his combat experiences.[23]  His

GAF was assessed by Dr. McCall at 45 in June and in August of 2007, and despite logical and

goal-directed thought processes, he continued to suffer from PTSD and mood disorder as well as

---

[16]*Id.*

[17]AR 832, 655, 834.

[18]*Id.*

[19]AR 654-60, 684-90.

[20]AR 357-58, 679, 815-20.

[21]AR 842-43.

[22]AR 817.

[23]AR 867-70.

memory problems.[24]

Shotwell began vocational rehabilitation with Ms. Shirley Ripp in March or 2005.[25]  He also attempted several classes at school, but despite using campus disability resources to their maximal extent, experienced varying but disappointing degrees of success.  When it became apparent that Shotwell would not be able to resume his duties with the Marines, and might never return to any gainful employment, Shotwell was dejected.[26]  He requested that Dr. McCall restart vocational rehabilitation, but continued to suffer mental/physical impairments throughout 2008.[27]

The VA determined that Shotwell had a thirty percent service related disability in July of 2005 and then assessed a combined rating of 70 percent.[28]  The VA found Shotwell entitled to Individual Unemployability on August 24, 2006 because he "remain[ed] unable to secure or follow a substantial gainful occupation as a result of [his] service connected disabilities."[29]  On December 18, 2006, the VA terminated vocational rehabilitation, notifying Shotwell that his "disabilities ma[d]e it unreasonable" to expect that their services could assist him in finding gainful employment.[30]

---

[24]AR 856-58, 863-64.

[25]AR 766-800.

[26]AR 851-52.

[27]AR 876-83

[28]AR 807-08, 812.  The disability was service related because Shotwell was returning to base at the time of the accident.

[29]AR 801-03.

[30]AR 697-99.

### III. STANDARD OF REVIEW

The Social Security Act provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[31] Upon denial of disability benefits after a hearing by an Administrative Law Judge ("ALJ"), a claimant may request that the SSA Appeals Council review the ALJ's decision.[32] A person is not disabled if he or she is capable of engaging the "substantial gainful work which exists in the national economy."[33]

On de novo review, a district court may enter, upon the pleadings and a transcript of the record, a judgment affirming, modifying, or reversing the ALJ's decision, with or without remanding the case for a rehearing.[34] The district court must uphold the ALJ's decision if it is supported by substantial evidence and the ALJ has applied the correct legal standards.[35] When the claimant is clearly disabled, the claimant is entitled to benefits, and the Court may direct the Agency to award them on remand.[36]

---

[31]42 U.S.C. § 423(a)(1).

[32]20 C.F.R. § 404.967.

[33]42 U.S.C. § 423(d)(2).

[34]42 U.S.C. §405(g).

[35]*Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2001). See also *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[36]*Strauss v. Comm'r of Soc. Security*, __ F.3d __, 2011 WL 1108221 (C.A.9 (Or.)) (citing *Benecke v. Barnhart,* 379 F.3d 587, 590 (9th Cir.2004).

# IV.  DISCUSSION

A. <u>The ALJ erred when finding that the rehabilitation report was evidence tending to prove Shotwell was not cognitively impaired</u>.

An ALJ commits legal error when selectively relying on portions of a doctor's treatment notes and ignoring other portions that indicate a claimant is disabled. Here, the ALJ erred by selecting portions of the record, specifically the 2005 Ripp Rehab, Inc. vocational report, when discussing Shotwell's cognitive impairments.[37]  The ALJ failed to consider this vocational evaluation report in the context of later neuropsychological evaluations, and failed to include critical information in the summary of the report.[38]  In the 2005 report, Ms. Ripp indicated that further neuropsychological evaluation was necessary to assess the extent of Shotwell's cognitive impairments.[39]  Quoting Ms. Ripp's recommendation, the ALJ selected the following statement as suggesting that Shotwell was not impaired: "The evaluator indicated the claimant did not show strong cognitive deficits or problems with his memory during the assessment."[40]  Select vocational skills tests do not reflect a true picture of Shotwell's cognitive impairments.  The evaluation recommended that Shotwell receive a "neuropsychological evaluation to pinpoint where he is in regards to [cognitive and memory] limitations."[41]  The ALJ quoted the sentence to misleadingly indicate that Shotwell's memory and cognition were not impaired and ignored the

---

[37]AR 21.

[38]*Id.*

[39]AR 777.

[40]AR 21.

[41]AR 777.

second half that indicated he was. The evaluation as a whole reveals strong deficits.[42] The

recommendation for further neuropsychological testing, which was completed in December

2006, as well as the entirety of the statement made, indicate severe cognitive deficits overall.

The law is clear in this circuit that the ALJ must defer to the treating doctor's opinion,

even if controverted by another doctor, unless the ALJ makes findings setting forth specific,

legitimate reasons for rejecting it that are based on substantial evidence in the record.[43] "The

ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings."[44] Here, the

ALJ obviously misread the record in a fundamental way, and the reasons given for finding that

Ms. Ripp thought Shotwell was not cognitively impaired simply defy a plain-letter reading of the

record. For this reason, the ALJ's interpretation of this portion of the record, and the findings

based on it, are not supported by substantial evidence, and the case must be remanded.[45]


B. The ALJ erred by failing to properly evaluate the VA determination in compliance

with the Appeals Council remand order.

The Commissioner's regulation, 20 C.F.R. § 404.977(b), mandates ALJ compliance with

---

[42]AR 766-77. Extreme weakness in left hand, memory problems in select areas.

[43]*See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).

[44]*Magallanes*, 881 F.2d at 751.

[45]*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).

Appeals Council remand orders: "The administrative law judge shall take any action that is ordered by the Appeals Council...." An agency abuses its discretion when it fails to abide by its own regulations.[46] The Appeals Council remand order in June 2008 instructed ALJ Knight to "evaluate the disability rating from the Veterans Administration."[47] The remand order noted that in the previous hearing the ALJ failed to indicate what weight was given to the Veterans Administration disability rating.[48] The ALJ discussed the Veterans Administration rating but did not *evaluate it*, i.e., discuss its weight in accordance with Ninth Circuit case law.

"[I]n an SSD case an ALJ must ordinarily give great weight to a VA determination of disability."[49] The ALJ found *McCartey* not applicable because the ALJ believed the evidence of record did not comport with the Veterans Administration decision.[50]

Both the SSA and VA programs have detailed regulatory schemes that promote consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework. Because the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported

---

[46] *Reed v. Massanari*, 270 F.3d 838, 842-43 (9th Cir. 2001.)

[47] AR 209.

[48] AR 208.

[49] *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002).

[50] AR 25.

by the record.[51]  A rejection simply because the VA's disability rating inquiry is different from the SSA inquiry is invalid; but a rejection of a VA determination because that determination was not based on a comprehensive evaluation of the evidence available is valid.[52]

The ALJ rejected the VA's rating with nothing more than an indication that the VA criteria for disability differs from SSA criteria.  The VA Determination was deemed "difficult to understand" given the claimant's abilities, and the ALJ noted that the VA and SSA criteria for establishing disability are markedly different.[53]  Such cursory dismissals of VA evidence are explicitly forbidden by the Ninth Circuit, which requires reversal for such errors.  Disturbingly, the ALJ made this error after a remand by the Appeals Council with specific instructions to evaluate the VA ratings.


C. <u>The ALJ improperly relied on nonexamining experts while not clearly stating legally permissible reasons for doing so.</u>

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

---

[51]*McCartey v. Massanari*, 298 F.3d at 1076. *See also Chambliss*, 269 F.3d at 522 (ALJ need not give great weight to a VA rating if he "adequately explain[s] the valid reasons for not doing so").

[52]*Valentine v. Comm. Social Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).

[53]AR 25.

physicians).[54]  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.[55]  The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.[56]  The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.[57]  *Gallant* held that "the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence" and, therefore, did not support the Commissioner's decision to reject the examining physician's opinion that the claimant was disabled.[58]  Similarly, *Pitzer* concluded that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence.[59]

Some cases have upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.[60]

---

[54] For purposes of this opinion, the term "physician" or "doctor" includes psychologists and other health professionals who do not have M.D.'s.  See 20 C.F.R. § 404.1527 (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating sources and examining sources).

[55] *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).

[56] *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

[57] *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.

[58] 753 F.2d at 1456.

[59] 908 F.2d at 506 n. 4.

[60] *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).

*Magallanes* stated that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...."[61]  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with his treating physician's opinion.[62]  "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."[63]  The nonexamining physician's opinion must be "supported by other evidence in the record and [be] consistent with it."[64]

In the present instance, the ALJ assigned "substantial weight" to the opinion of a nonexamining state agency reviewer who reviewed the medical records.[65]  The ALJ adopted the reviewer's opinion that Shotwell had the physical capacity to perform medium work, implicitly rejecting the opinions of examining physicians, because the nonexamining reviewer's opinion was "supported by the overall medical evidence" and was "consistent with the finding herein that the claimant is not disabled."[66]  The ALJ also found the testimony of the nonexamining psychologist given at the hearing "persuasive" because he was "well qualified" and his opinion

---

[61]*Magallanes*, 881 F.2d at 752 (emphasis in original).

[62]*Id*. at 751-52.

[63]*Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996).

[64]*Morgan*, 169 F.3d at 600.

[65]AR 25.

[66]AR 25.

was "supported by the overall evidence of record."[67]  The ALJ's RFC finding implicitly rejects the opinions of Shotwell's treating and examining physicians without comment, by adopting in the RFC the capacities opined by the nonexamining physicians.[68]  Neither nonexamining physician's opinion comports with the overall record.[69]

No specific evidence was cited by the ALJ when rejecting treating and examining physician opinions and instead relying on the opinions of non-treating, nonexamining physicians. The findings are not supported by substantial evidence, and the ALJ's decision fails to comply with case law on the relative weight of evidence.

D. The ALJ improperly discredited Shotwell's testimony, which shall be credited as true.

Generally "questions of credibility and resolution of conflicts in testimony are functions solely" for the agency.[70] As the Ninth Circuit has observed, an ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).... This holds true even where the claimant introduces medical evidence showing [s]he has an ailment reasonably expected to produce *some* pain; many medical conditions  produce pain not severe enough to preclude gainful employment.[71]  The ALJ found Shotwell's testimony unpersuasive because it was "inconsistent

---

[67]AR 23.

[68]*Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir.1996).

[69]Relevant Background, *supra.*

[70]*Parra,* 481 F.3d at 750 (citation omitted).

[71]*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis in original).

and vague," but the ALJ's findings on this point are not supported by a plain reading of the record, much less a scintilla of evidence.[72]  Because no valid reasons were given for finding Shotwell uncredible, the ALJ's finding must be reversed.

Shotwell testified that he played guitar as recommended for vocational rehabilitation, although his left hand lacked coordination, which prevented him from playing to his prior level. Shotwell testified that he could not play the guitar at a professional level anymore.  The ALJ apparently read contradiction into Shotwell's testimony by being deliberately obtuse: Shotwell testified that he could not play the guitar and then "when questioned about the numerous references to guitar playing in the record" explained that he could not play at his prior skill level.[73]  The ALJ also rejected Shotwell's testimony as "unclear with regard to what classes he failed...."[74]  The ALJ again either carelessly or deliberately misread the record.[75]  The ALJ found that Shotwell's activities of daily living, such as playing the guitar (part of rehabilitation), going on a cruise, and owning a driver's license, indicate that he was not as impaired as he claimed.[76]

---

[72]AR 24.

[73]AR 24, 118-120. Shotwell explained that he had opened for a national band before the accident but that he now only did opening tuning and suffered a severe reduction in coordination.

[74]*Id.*

[75]AR 120 ("[Shotwell:] I've had a couple classes that I've failed, yes. I can't really remember the names though. [ALJ:] Any classes that you've passed? [Shotwell:] Yeah, I've passed my music theory class.").

[76]*Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (finding record provided "little support for the ALJ's credibility finding" when "the ALJ relied largely on Benecke's ability to carry out certain routine tasks"); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding that claimant's daily activities "did not consume a *substantial part* of [her] day,"

Shotwell claimed that a combination of physical and severe mental impairments prevented him from working; the ALJ cited only physical activity as inconsistent with his testimony. Shotwell's attempt to work one day per week checking IDs at a bar did not undermine his credibility.[77] None of the ALJ's reasons for finding Shotwell not credible were legally permissible, and the finding was not supported by substantial evidence.

When the ALJ fails to provide sufficient reasons for rejecting the claimant's testimony, it may be credited as true.[78] The court should credit a claimant's testimony as true "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits" otherwise.[79] Other factors that may justify the credit-as-true rule, where it would not result in the immediate payment of benefits, may include the advanced age of a claimant, or an already substantial delay in the application.[80]

It appears to this court that the ALJ found Shotwell not disabled solely because he did not credit Shotwell's testimony. He rejected the opinions of Shotwell's treating physicians because they conflicted with Shotwell's testimony and opinions given by nonexamining physicians.

---

noting the "court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

[77]*Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ;*see also Copeland v. Bowen,* 861 F.2d 536, 542 (9th Cir.1988).

[78]*See Benecke v. Barnhart*, 379 F.3d 587, 593-595 (9th Cir. 2004).

[79] *Varney v. Secretary of Health and Human Services (Varneyy II)*, 859 F.2d 1396, 1401 (9th Cir. 1988).

[80]*Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989).

However, as stated above, the ALJ improperly discounted Shotwell's testimony, and evaluated the medical evidence in a manner inconsistent with Ninth Circuit precedent. Because none of the ALJ's reasons for finding Shotwell not credible were legally proper, the ALJ's finding that Shotwell's testimony was not fully credible was improper. If Shotwell's testimony (or the opinion evidence of treating and examining physicians) had been credited,[81] Shotwell would have been established as established. The Vocational Expert based the jobs she identified as available to Shotwell (teachers' aide, cashier, assembler, packer and gate guard) required the ability to sustain attention and concentration.[82] *Varney* guides this Court "[i]n cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's ... testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will ... take that testimony to be established as true."[83] "Although the ALJ later decided that these limitations were not credible, the vocational expert's testimony establishes that taking [Plaintiff's] testimony as true, he was disabled."[84] Shotwell's testimony and the medical evidence, when considered in the context of the VE's testimony, convince the Court that he could not perform these positions, due to his mental limitations, which were not fully considered.[85] Because Shotwell can be clearly

---

[81]*Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir.1996).

[82]AR 13-25, 131.

[83]*Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988).

[84]*Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007).

[85]AR 123-31.

established as disabled when his testimony is credited as true, *Strauss* is distinguishable.[86]  For

this reason, the case will be remanded for an award of benefits.[87]


## V.  CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment at Docket

17 is GRANTED. This case will be remanded to the Commissioner to award benefits.

DATED, this 3rd day of August, 2011.

/s/ Timothy M. Burgess
JUDGE TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[86]*Strauss v. Commissioner of the Social Sec. Admin.*, — F.3d —, 2011 WL 1108221, *2 (9th Cir. 2011) (remand for award of benefits inappropriate when Claimant not clearly disabled).

[87]The Commissioner cites *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (crediting opinion as true where abundance of evidence supported that interpretation and claimant had waited 12 years for resolution of his claim).  Were this Court to treat the credit-as-true rule as prudential, the facts of *Lester* as similar to the facts here; Shotwell has presented an abundance of evidence supporting his disability and the Commissioner's unreasonable delays in awarding benefits, even after an Appeals Council remand within the agency, lead this Court to determine that, even had there been no facts dispute on remand, an award of benefits would be appropriate.